UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MARY DIAS,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) NO. 3:14-cv-01842 |
| | ) Judge Crenshaw |
| **NANCY BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Pending before the Court is Mary Dias' ("Dias") Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 14), filed with a Memorandum in Support (Doc. No. 14-1). The Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion (Doc. No. 15). This case was referred to the magistrate judge (Doc. No. 3). The Court withdraws that referral. In addition, upon consideration of the parties' filings and the transcript of the administrative record (Doc. No. 10),[1] and for the reasons given below, the Court will **DENY** Dias' Motion and **DISMISS** the Complaint.

### I.  Introduction

On March 1, 2011, Dias filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act, alleging a disability onset of December 31, 2009 ("alleged onset date"). (A.R. 17.) Dias' claim was denied at the initial and reconsideration stages of state agency review. (Id.) Dias subsequently requested *de novo* review of her case by an Administrative Law Judge ("ALJ").

---

[1] Referenced hereinafter by page number(s) following the abbreviation "A.R."
1

(Id. at 97.) The ALJ heard the case on March 26, 2013, when Dias appeared with an attorney and gave testimony. (Id. at 32.) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the matter was taken under advisement until May 17, 2013, when the ALJ issued a written decision finding Dias not disabled prior on the alleged onset date. (Id.) That decision contains the following enumerated findings:

1. Dias meets the insured status requirements of the Social Security Act through December 31, 2009, the alleged onset date.

2. Dias has not engaged in substantial gainful activity since the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Dias has the following severe impairments: arthritis; left hand trigger finger and chronic hand pain secondary to Dupuytren's contracture (20 C.F.R. 404.1520(c) and 416.920(c)).

4. Since the alleged onset date, Dias does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. Dias had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967 (b) except she can occasionally lift and carry up to 20 pounds; frequently lift and carry up to 10 pounds; has no limitations in sitting or standing; no problems with the dominant right upper extremity, but can only engage in frequent pushing and pulling with the non-dominant left upper extremity within the weight limitations above; can only occasionally climb ramps and stairs; can frequently balance, stoop, crouch, kneel, and crawl; and has no manipulative limitations except with the non-dominant upper left extremity in which she can handle and finger (i.e. fine and gross manipulations) no more than frequently with the non-dominant left upper extremity.

6. Dias can perform past relevant work as a cashier and store manager. This work does not require the performance of work-related activities precluded by her RFC (20 C.F.R. 404.1565 ad 416.965).

7. Dias was not under a disability within the meaning of the Social Security Act at any time from April 2, 2006 through December 31, 2009, the date last insured (20 C.F.R. 404.1520(f) and 416.920(f)).

(Id. at 19–24.)

On July 20, 2014, the Appeals Council denied Dias' request for review of the ALJ's decision, thereby rendering that decision the final decision of the SSA. (Id. at 1.) This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of Record

The Court adopts the summary of Dias' records from the ALJ's decision. (A.R. 20–22.)

## III. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Buxton v. Halter, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." Brooks v. Comm'r of Soc. Sec., 531 F. App'x 636, 641 (6th Cir. 2013) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. See Hernandez v. Comm'r of Soc. Sec., 644 F. App'x 468, 473 (6th Cir. 2016 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (quoting Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even

3

where the conclusion of the ALJ may be justified based upon the record." Miller, 811 F.3d at 833 (quoting Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 722 (6th Cir. 2014)).

## B. Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Parks v. Soc. Sec. Admin., 413 F. App'x 856, 862 (6th Cir. 2011) (citing Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments

4

cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" Kepke v. Comm'r of Soc. Sec., 636 F. App'x 625, 628 (6th Cir. 2016) (quoting Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. See Anderson v. Comm'r of Soc. Sec., 406 F. App'x 32, 35 (6th Cir. 2010); Wright v. Massanari, 321 F.3d 611, 615–616 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. Wright, 321 F.3d at 615–616; see Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. Anderson, 406 F. App'x at 35; see Wright, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Glenn v. Comm'r of Soc. Sec., 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

5

## C. Weighing Medical Source Evidence

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In Gentry v. Commissioner of Social Security, the Sixth Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings. 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513. The second is known as the "treating physician rule," see Rogers, 486 F.3d at 242, requiring the ALJ to give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. Rogers, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. Id. The failure to comply with the agency's rules warrants a remand unless it is harmless error. See Wilson, 378 F.3d at 545–546.

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. Id. at 724 (citing Minor v. Comm'r of Soc. Sec., 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); Germany-Johnson v. Comm'r of Soc. Sec., 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. Gentry, 741 F.3d at 729 (citations omitted); Grubbs v. Comm'r of Soc. Sec., No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

### D. Dias' Statement of Errors

#### 1. The ALJ Failed to Properly Consider Other Severe Impairments.

Dias contends that the ALJ failed to give appropriate consideration to all her impairments. (Doc. No. 14-1, at 5.) Specifically, Dias claims that, although she "has been assessed with benign essential HTN; bronchitis; and Vitamin D insufficiency. The ALJ did not find these impairments severe and erred by failing to state why he did not find them to be severe." (Id.) However, at this second step in the disability determination, the burden is on the claimant to show that her impairment is severe and meets the 12-month durational requirement of the SSA. See Harley v.

7

Comm'r Social Sec., 485 Fed. App'x 802, 803 (6th Cir. 2012). To be severe an impairment must significantly limit a claimant's ability to perform basic work activities. See id. (citing 20 C.F.R. 404.1509, 404.521, 416.909, 416.921)). However, Dias points to no portion of the record in which she alerted the ALJ that her benign essential HTN, bronchitis, and Vitamin D insufficiency significantly limited her ability to perform basic work activities. (Doc. No. 14-1, at 5.) Indeed, she made no mention of those conditions in the hearing (A.R. 38–57), her disability report (id. at 206), or function report (id. at 213–218). Where a party fails to raise impairments as potentially severe and disabling, the Court need not evaluate them. See Nejat v. Comm'r Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009) (citing Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996)).

### 2. The ALJ Failed to Include a Function-by-Function Assessment in the RFC as Required by SSR 96-8p.

Dias claims that the ALJ failed to include a function-by-function assessment, as required by SSR 96-8p, because he failed to address how much walking Dias could do. (Doc. No. 14-1, at 6.) Under SSR 96-8p, walking is one of the seven exertional capacities an ALJ must assess on a function-by-function assessment. However, the ALJ is only required to make a function-by-function assessment for those capacities for which a claimant alleges limitations. Delgado v. Comm'r Soc. Sec., 30 F. App'x 542, 547–548 (6th Cir. 2002). Here, Dias has not alleged any limitations related to walking. It is not the task of the Court to raise limitations when the claimant herself fails to do so. See id. Consequently, there is no reversible error in the ALJ's omission of Dias' walking capacities in his functional assessment.

### 3. The ALJ Failed to Properly Consider Dias' Manipulative Limitations.

Dias claims that the limitations posed by the ALJ were "overly optimistic in light of the claimant's left upper extremity impairment." (Doc. No. 14-1, at 7.) Specifically, Dias claims that the ALJ erred by giving less weight to the second consultative examiner's opinion—that she could

lift and carry less than 10 pounds and is unable to grasp with her left hand—and finding that Dias "retains significant use of her left hand." (Id. (citing A.R. 22, 276).) Dias claims that "the ALJ failed to provide any citations to specific evidence that shows" this. (Id.) However, Dias cited the ALJ's statement out of context. The entire statement is as follows.

> I give great weight to the state agency medical consultants (Exs. 8F-9F). These opinions are generally consistent with physical examinations of the claimant and the claimant's reported activities of daily living. The claimant's grip strength was 20 pounds in her left hand. She was able to lift ten pounds in each hand. I give some weight to the opinion of the first consultative examiner in that it supports the contention that the claimant has the capacity for light exertional activities. (Ex. 3F). I give less weight to the opinion of the second consultative examiner because the evidence shows that the claimant retains significant use of her left hand.

(A.R. 22.) Clearly, the ALJ did provide citations to specific evidence to support his conclusion so Dias' argument, in this regard, is without merit.

Dias also claims that the ALJ erred by mentioning neither the second examiner's finding that Dias' left hand strength to be 3/5 nor her testimony—about not being able to play guitar or open bottles and jars[2]—which both support a finding of greater limitations. (Id. at 8.) It is true that an ALJ may not determine the RFC by failing to address portions of the relevant medical record, or by selectively parsing that record—*i.e.*, "cherry-picking" it—to avoid analyzing all the relevant evidence. Gentry, 741 F.3d at 724 (internal citations omitted); Germany-Johnson, 313 F. App'x at 777. However, this maxim more aptly applies to the opinions of treating physicians. In the instant case, Dias submitted no records from treating physicians pertaining to her manipulative limitations. As such the case is more closely analogous to those in which the Sixth Circuit held that claimants were "merely marshalling evidence to suggest" that they were disabled when the

---

[2] The ALJ summarized Dias' testimony about problems with her left hand, specifically mentioning her statement that "she cannot open bottles or jars." (A.R. 21.)

9

question, at the district court level, is whether the ALJ's decision "is not supported by substantial evidence." Peterson v. Comm'r Soc. Sec., 552 F. App'x 533, 540 (6th Cir. 2012) (holding, among other things, that the ALJ's failure to explicitly address a competing IQ test by an examining psychologist, not a treating physician, "does not indicate that he disregarded these results or that his decision is not supported by substantial evidence."); see also Ulman v. Comm'r Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (holding that, while the ALJ erred in making an observation that error was harmless, as "substantial evidence is the applicable standard of review not perfection" and the claimant's argument would only "be persuasive if the ALJ based his . . . finding solely or primarily on the factual error identified".). In light of the substantial evidence standard, the lack of treating physician records, and the ALJ's generally thorough citation to both Dias' testimony and the opinions of consultative examiners, the ALJ's failure to specifically cite to portions of the consultative examiner's opinion that might support Dias' claims, if it constitutes error at all, is harmless.

### 4. The ALJ's Credibility Determination of Dias' Symptoms Was Not Properly Evaluated and Assessed as Required by SSAR 96-7P.

Dias claims that "the ALJ merely stated that he used the criteria outlined in SSR 96-7p in reaching his decision, rather than specifically stating the weight he gave" to Dias' statements concerning her symptoms. (Doc. No. 14-1, at 10.) However, Dias failed to cite any portion of the ALJ's report or administrative record to show where "the ALJ decreased claimant's credibility based on certain findings from physical examinations on file. . . other physical examination findings supported the claimant's complaints and bolstered her credibility. The ALJ ignored these findings in the decision." (Id. at 10–11.) Where a party fails to cite to the administrative record in support of its argument, it is not the task of the Court to scour the record on that party's behalf. See Markel v. Comm'r of Soc. Sec., No. 13-11196, 2013 WL 5854467, at

10

*3 (E.D. Mich. Oct. 30, 2013) (citing McPherson v. Kelsey, 125 F.3d 989, 995–996 (6th Cir.1997) ((("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.") In the absence of any specific citations to Dias' argument that the ALJ's reasons for decreasing her credibility were insufficiently specific, the Court finds that this claim is without merit.

## IV.  Conclusion

For the reasons explained above, Dias' Motion for Judgment on the Administrative Record (Doc. No. 14) will be **DENIED** and the Complaint will be **DISMISSED.**

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR
UNITED STATES DISTRICT JUDGE